Hand v. Marcy.

JONATHAN HAND and others, executors, &c., of Matthew Marcy, deceased,

v.

HANNAH MARCY and others.

1. A testator gave to his wife, who is still living, a legacy in lieu of her dower, which she afterwards accepted. He then gave his executors a power of sale, and directed a conversion of all his lands, (excepting a part not involved in this case.) He then gave and bequeathed the residue of his estate to S. M., L. E. and M. S., their heirs and assigns, to be equally divided between the said S. M., L. E. and M. S. The last named legatee died in the lifetime of the testator. *Held*, that the words, "their heirs and assigns" do not, of themselves, prevent a lapse of M. S.'s legacy, a contrary intention not appearing in any other part of the will.

2. The surviving residuary legatees are not entitled to such lapsed legacy as part of the residue, nor by survivorship.

3. The direction to convert being absolute, such legacy goes to the testator's next of kin, as personal property.

4. The will barring only the widow's right of dower in lands by her accepting the legacy in lieu thereof, she is entitled to a distributive share of such legacy.

On final hearing on pleadings.

*Mr. J. B. Huffman*, for the executors.

*Mr. A. C. Scovel*, for the next of kin and heirs-at-law of testator.

*Mr. P. L. Voorhees*, for surviving residuary legatees and children of Mary W. Stevens.

THE CHANCELLOR.

The executors of the will of Matthew Marcy, deceased, late of the county of Cape May, file their bill asking direction in reference to the payment of certain money in their hands, being the share (one-third) of the residuum of the estate given by the will to the testator's sister, Mary W. Stevens.

The testator, at the time of his death, was the owner of both personal and real estate. By the second section of his will, he gave to his wife, who is still living, $11,000 and the use for life of two farms belonging to him, in lieu of dower in all the rest of his land. He gave the farms, after her death, to J. Henry Schellinger, in case she should accept that provision; but if she should not accept it, he directed that they be sold under the power of sale in his will. He gave to his executors absolute direction to sell all his other land. He then gave certain pecuniary legacies, and made provision for the purchase of a tombstone for his grave and for the fencing of the grave-yard, and then gave and bequeathed the residue of his estate " to Samuel S. Marcy, Lucy E. Edwards, and Mary W. Stevens, their heirs and assigns, to be equally divided between the said Samuel S. Marcy, Lucy E. Edwards, and Mary W. Stevens."

The last named legatee died in the lifetime of the testator. The questions propounded are : To whom does the share of the residue which thus lapsed, go,—to the surviving residuary legatees, or to the children of Mary W. Stevens, or to the next of kin and heirs-at law, or next of kin only, of the testator? and if to the next of kin and heirs-at-law, or to

the next of kin only, is the widow of the testator entitled to any part thereof, and, if so, to what part?

The gift of the residue is to Samuel S. Marcy, Lucy E. Edwards, and Mary W. Stevens, their heirs and assigns, to be equally divided between the said Samuel S. Marcy, Lucy E. Edwards, and Mary W. Stevens. By this language, a tenancy in common was created, not a joint-tenancy. The survivors, therefore, are not, by the bequest, entitled, as survivors, to the whole of the residue. By the death of Mrs. Stevens in the lifetime of the testator, the residuary legacy to her lapsed, unless the words "their heirs and assigns," in the residuary clause, prevent that result. Of themselves, they will not do so, but will be held to be words of limitation. *Viner's Abr.*, vol. 8, p. 372; *Gittings v. McDermott*, 2 *M. & K.* 65; *Armstrong v. Moran*, 1 *Bradford's Surr. R.* 314. Nor does it appear, from the other parts of the will, that the testator meant by the use of those words to provide for the substitution of the children, or heirs-at-law, or the next of kin, of Mrs. Stevens, in her stead, in case of her death in his lifetime. The language of the clause is: "I give and bequeath the residue of my estate to Samuel S. Marcy, and Lucy E. Edwards, and Mary W. Stevens, their heirs and assigns, to be equally divided," not between *them*, but "between the said Samuel S. Marcy, Lucy E. Edwards, and Mary W. Stevens." The clause itself contains no evidence that the idea of substitution was in the mind of the testator when he drew the will (for it is a holograph) but, for aught that appears, he used the language "heirs and assigns" in precisely the same sense in which he had used it in the devise to J. Henry Schellinger of the remainder in his two farms, after the life estate of his widow. His language there is: "I give and bequeath the two plantations above mentioned, after my said wife's decease, to J. Henry Schellinger, his heirs and assigns," &c. There is no evidence of any intention to prevent a lapse in that devise, by the use of the words "heirs and assigns," but those words were used merely to convey a fee.

It is urged, however, that the word "heirs" is used in another place in the will, in the gift to Helen Frink, as a word of substitution. The language of that bequest is: "I give and bequeath to Helen Frink, daughter of my sister, Martha R. Frink, and her heirs, $1,000." But that it was not the testator's intention, by the use of the word "heirs" in that bequest, to prevent a lapse, appears by the bequest which immediately follows it: "I give and bequeath to Harvey Frink, son of my sister, Martha R. Frink, $500; but, in case said Harvey should die without lawful issue, then the said $500 to go to his sister, Helen; and in case neither the aforesaid Helen or Harvey should not survive me, then their shares herein bequeathed to be equally divided between the heirs of my brother, William W. Marcy, deceased." So that, notwithstanding the use of the word "heirs" in the bequest of $1,000 to Helen, he provides that, in the event of the death of both her and Harvey in his lifetime, that legacy shall go, not to her children or next of kin, but to the "heirs" of his deceased brother, William. It is worthy of remark, too, that he does not use the word "heirs," nor any other word of limitation or substitution, in connection with any other devise or bequest than those above mentioned.

In *Gittings* v. *McDermott*, 2 *M. & K.* 65, there was a bequest to the children of the testator's sister "or to their heirs." Three of the children died in the testator's lifetime, and the question was, whether their legacy lapsed, or whether their heirs or next of kin were, in the event which had happened, entitled by substitution. In construing the will, it was held that the word "or" implied a substitution, and the word "heirs," used in respect to personal property, was to be taken to mean next of kin. The master of the rolls said, that the construction was the effect of the word "or," and that the result would have been entirely different had the word "and" been used instead. The lord chancellor (Brougham), in deciding the case on appeal, said: "The force of the disjunctive word 'or' is not easily to be

Hand v. Marcy.

got over. Had it been ' and,' the words of limitation would, of course, as applied to a chattel interest, have been surplusage; but the disjunctive marks, as plainly as possible, that the testator, by using it, intended to provide for an alternative bequest, namely, to the legatees, if they should survive, and, if they should not, to their heirs."

Neither the copulative nor the disjunctive is used in the residuary clause under consideration (the copulative, however, is understood), but, as in the devise to Schellinger, the words are used as words of limitation merely, and are evidence merely of an intention on the part of the testator to give the property to his brother and two sisters therein named, absolutely. The cases in which it has been held that like words would not prevent a lapse, are numerous.

In *Sword* v. *Adams*, 3 *Yeates* 34, there was a devise to a woman, " her heirs and assigns." She died in the testatrix's lifetime, leaving an infant son. It has held that the devise lapsed, though the testatrix was assured by one interested in the estate that the son would take.

In *Sloan* v. *Hanse*, 2 *Rawle* 28, the devise was of all the testator's estate, real and personal, to his two cousins, Richard and Joseph Hanse, to be equally divided between them, " or to their heirs." Richard Hanse was dead at the time of making the will, but this fact was not known to the testator. It was held that the devise to him lapsed. The court there said that the inference to be drawn from the use of " or " instead of " and ", was too feeble to disinherit the heir of the testator.

In *Comfort* v. *Mather*, 2 *W. & S.* 450, the language of the bequest, which was of a sum of money, was " to have and to hold to her, the said Sidney Eastburn, her heirs and assigns forever." Sidney Eastburn was not a lineal descendant of the testator. She died in his lifetime, and he knew of her death, and intended that her children should have the money, but it was held that the legacy lapsed.

In *Dickinson* v. *Purvis*, 8 *S. & R.* 71, the bequest was of a sum of money to the testator's niece, " and her heirs."

She died in the testator's lifetime. It was held that the legacy lapsed.

In *Armstrong* v. *Moran*, 1 *Brad. Surr. R.* 314, the bequest was of the testator's personal estate, to his brother, James, and his children, and the child of the testator's sister Catharine, to be equally divided between them, "and their heirs and assigns forever." The child of Catharine died in the lifetime of the testator, and it was held that its share lapsed.

In *Hawn* v. *Banks*, 4 *Edw.* 664, the testatrix gave to her niece, " and to her heirs," a sum of money. The niece died in the lifetime of the testatrix. The court held that though, if the language of the bequest were regarded alone, the legacy would lapse, yet upon the evidence furnished by another clause of the will, of the testatrix's meaning in the use of that language, the word " heirs " was used by way of substitution.

Nor does the scheme of the will under consideration in the present case, afford any evidence of the testator's intention to prevent a lapse. It may be conjectured that if his attention had been directed to the subject, he would have used language to prevent the lapse, and it is quite probable that he would have done so. The question, however, is not what he probably would have said, but what did he mean by the language he has used. The gift to Mrs. Stevens lapsed by her death in the testator's lifetime. The share of the residue given to her does not go to the surviving residuary legatees. The gift of the residue is to the legatees therein named, as tenants in common. It is to them by name, with direction that it be equally divided between them. The surviving residuary legatees are not entitled to the share given to Mrs. Stevens by right of survivorship. *Mason's Ex.* v. *Trustees, &c.*, 12 *C. E. Gr.* 47. Nor are they entitled to it as part of the residue. *Garthwaite's executors* v. *Lewis*, 10 *C. E. Gr.* 351. The testator died intestate as to that share, and it goes to his next of kin. Though composed partly of the proceeds of the testator's real estate, it nevertheless goes wholly to his next of kin, for the direc-

Hand *v.* Marcy.

tion to convert was absolute and unqualified. The testator intended that the land should be turned into money in any event, and at all events. *Miller's adm'r* v. *Miller,* 10 *C. E. Gr.* 351, *and cases there cited.*

The remaining question is as to the right of the widow in the share. She, indeed, accepted the provision made for her in lieu of her dower, but it does not follow that she has, therefore, no claim as against so much of the share as is the proceeds of the sale of real estate; for the direction to convert made it personal property. And though she would have no right in it as against any legatee, yet as it is, in equity, personal estate of which the testator died intestate, and as she is not barred by the will of any claim upon her husband's estate, except her right of dower in so much of his land as was not devised to her and her nephew, Schellinger, and any claim to personal property bequeathed by him, her claim to a distributive share in the personal property not disposed of by him by his will, though that personal property be wholly derived from the sale of his land, is unaffected by her acceptance of the provision in lieu of dower. The next of kin cannot challenge her right, for their claim arises wholly out of the conversion. If the lapsed legacy in question be regarded as land, then she, indeed, would have no right to it, for her dower therein is barred, but the next of kin would in that case have no right to the legacy. As against the heir-at-law, she would, indeed, have no claim to it, but because of the conversion the heir has no claim. The widow is entitled to her distributive share of the lapsed legacy.